Good morning. May it please the court. My name is Corrie Hong and I represent petitioner Musi Gebreweldi. I wish to reserve two minutes and we'll watch the clock. Okay, thank you. I wish to address CAT, asylum, and then indemnizability. First, the easiest way for the court to resolve this case is to recognize that Mr. Gebreweldi cleared the bar to show change country conditions. In April 2019, the IJ denied CAT, explaining that the 2018 peace accords made it safe for him to return to Eritrea. There was no evidence he'd be singled out. The only likely harm was being denied some government services and the government actors who were involved with torture. Counsel, what if we think that we personally agree with your position, but what standard do you have to hurdle in order for us to rule in your favor? Substantial evidence, your honor, and I would point to Xochitl Jimenez as the best legal authority to show how this court does have the authority to clear that hurdle when both parties, both the court and the BIA, look at the same evidence and can draw the correct inference from them. To show that in April 2020, the BIA said that conditions improved in Eritrea after 2018, and here there is nothing in the record to support that finding. Eritrea is like North Korea. It is repressive, it is totalitarian, and conditions worsened after the 2018 peace deal. The best evidence is the September 2019 European Asylum Office report at AR 153-232, which documents that after the peace deal, Eritrea closed the border, it no longer accepts failed asylum seekers, it punishes those who have left the country with a three-year prison term, and torture is documented in those prisons. That is enough to show that the conditions are qualitatively different in Eritrea in the fall of 2019 than they were in April 2019. In fact, this is stronger evidence than what the court found in Malte to be sufficient for the qualitative different standard. What evidence in the record indicates that the situation in Eritrea was more harsh and repressive when Mr. Ghebrewaldi filed his motion to reopen than when he was initially denied immigration relief? Your Honor, that is what the BIA explained all the evidence was. It was simply harsh conditions. But what SYG demands us to look at is to say, why did the IJ deny the claim at the merits hearing, and what evidence is in the motion to reopen? Looking at those two points of time, we have to look at what the IJ found, where he said it's safe to return, the borders are open, and there's no likely harm beyond being denied government services. That is contradictory to September 2019 European report. It's also contrary to the June 2019 article summarizing the United Nations report, in which it's claimed that an unknown number of Eritreans are jailed without trial, torture is documented in prison, and there's ongoing abuse and repression, which rebuts what the IJ had found in April 2019. I have another question. Do you have any authority that requires that the BIA on a motion to reopen, as contrasted to a motion to reconsider, is required to reconsider the merits of an underlying credibility determination? Yes, Your Honor, that goes to my second reason. There is no case on point. This appears to be a novel issue, but looking at the regulations, starting at 8 CFR 1003, at point 23 B1, the regulation clearly says that the motion filed under that regulation will be a motion to reopen or reconsider. That is different than 1003.3, which governs motions to reopen filed with the BIA. Under point three, there is subsection C, which is a motion to reopen, and subsection D, which is a motion to reconsider. The motion filed with the IJ, by contrast, collapses both of those under 23.1. Now, AR 134, Mr. Gabriel de Faltrose, his motion, which he captioned motion to reopen, but he expressly invokes point 23 B1, and under his request for the BIA to look again at the asylum and withholding and can't claim. Combining those together, it shows that the BIA denied this by saying, we can't look at it because he should have filed a motion to reconsider with the IJ. But when we look at his filing at 134, and when we look at the actual regulation he invoked, he did file a motion to reconsider. So your honor, the closest authority I have is Lona B. Barr, and that is what has said that when the BIA denies a motion for an incorrect legal premise, the proper remedy here is to remand that to the BIA to analyze it under the proper legal premise. On the third point, and I think the most complicated issue, is as an arriving asylum seeker, can the DHS charge Mr. Gabriel de with being inadmissible under A6? Because that applies to those who will, or can the, I'm sorry, can the DHS charge him under A7? And did you, counsel, did you exhaust that problem, that challenge? No, your honor, because at the time, as the exhaustion under, Congress requires only right. And the Minto case, the Ninth Circuit authority was fully in force during that time, and so any attempt to raise this argument to the BIA would have been futile. What is significant is that, in fact, there was a BIA claim made by an arriving asylum seeker in 2020 under MDCV, in which she argued the same argument, and the BIA said, I'm sorry, we're foreclosed because of Minto. The Ninth Circuit has recognized that when that happens, the exhaustion is met. So turning then to the merits of the claim. Counsel, what difference does it make how his status was understood to be at the time of his IJ hearing? As IJ, your honor, the only question was, was the initial inadmissibility charge properly sustained? And if it found out, and that goes to a matter of fair process under due process, that the government has to place him in proceedings under the proper charge. The remedy under matter pena is to vacate the removal order and remand it for the DHS to recharge him with the appropriate inadmissibility ground, which I would say would be under A6, which applies to all those without documentation, whereas A7 applies to only those who don't have documentation enumerated under 11881, which applies to retrain LPRs. So what you're asking for is a new IJ hearing? Well, it would actually, under matter pena, it's letting the DHS decide how to proceed under the proper inadmissibility ground. Given that now there's new priorities list, the DHS might not even want to initiate proceedings, or if it does under A6, they would charge it, the evidence here would sustain it, and then even proceed with a new hearing. Thank you. And if there are no further questions, may I reserve my remaining time? Certainly, thank you. All right, we'll hear from the government. Good morning, may it please the court. I'm Brett Kinney on behalf of the Attorney General. This court should dismiss the petition for review in part, and deny it in part, for three reasons. First, the petitioner failed to exhaust his challenges to his charge of removability, and this court lacks jurisdiction to consider his arguments in the first instance. Second, the petitioner failed to carry his heavy burden to demonstrate a material change of country conditions to excuse the untimeliness of his motion to reopen. And third, the petitioner's belated collateral attacks on the immigration judge's prior administratively final order of improper, and the board permissively declined to consider them. Accordingly, the petitioner has provided no basis to disturb the public interest in the finality of his proceedings. So, what would be the practical consequences of adoption of Mr. Berwaldi's argument that a person who seeks admission in the country, but does not fill out a formal application for admission, is not an arriving alien? What would be the practical consequences of that? It would read 8 U.S.C. section 1182, A7, right out of the statute. It doesn't, under the petitioner's theory, there would be no situation in which an arriving alien, who comes to a port of entry, and asks for permission to physically enter the United States, could be held inadmissible for lacking a valid entry document. And that is not what Congress intended, and that is not what this court stated is the correct interpretation of 1182, A7 in TORAS. In addition, the petitioner's arguments have no basis in the statute or this court's case law. For example, the petitioner contends that he was not an arriving, he was not an applicant for admission because he, at some point in the future, may have wished to apply for asylum, but Congress specifically contemplated in 8 U.S.C. section 1225, B1, that there are individuals who are inadmissible under 1182, A7, who wish to seek asylum, and those individuals are given a credible fear process. And so the petitioner's arguments to the contrary simply cannot account for the statute. In addition, this court indicated, or the basis for this court's decision in TORAS, is that an individual who comes to a port of entry and asks for permission to enter is the paradigmatic example of an applicant for admission. So there is no basis, in fact, or law for the petitioner's attacks on 1182, A7. But this court may not even reach that issue because it lacks subject matter jurisdiction to do so, because the petitioner concedes that he never raised this argument before the agency. Instead, he attempts to rely upon the futility exception to escape the mandatory and jurisdictional exhaustion requirement by contending that his arguments were foreclosed by Minto. But that is incorrect, because in order for the futility foreclosed by binding precedent that the agency couldn't grant relief, and in order for it to be decision to be so preclusive, the issue must have actually been raised and litigated and passed upon in a binding decision. Minto does not satisfy those criteria. There is no indication in this court's decision that that individual had claimed that he was not an applicant for admission because he wished to apply for asylum, which is the petitioner's argument here. And it's hard to see how the petitioner in that case could have raised that argument, given that individuals present in the Commonwealth or the Northern Mariana Islands were statutorily prohibited from applying for asylum before January 1, 2014. Accordingly, Minto did not foreclose the petitioner's arguments, nor was the petitioner prohibited from arguing to the agency that Minto did not control this issue. Do you want to respond to Ms. Hong? I asked her a question about the motion to reopen and the motion to reconsider. Did Mr. Gibraldi's motion to reopen allow the BIA in its discretion to reconsider the underlying adverse credibility determination? No, Your Honor. And notably, the petitioner's contention that this is a novel issue with no precedent on point is incorrect. In Doysante v. Mukasey, this court held that a motion to reopen does not bring up the underlying adverse credibility determination. And this court also stated that in Tofigi v. Mukasey, which the petitioner tried to attack his underlying credibility determination, and this court said that that was not permissible because motions to reopen and motions to reconsider serve different functions. It is the function of a motion to reconsider to raise errors of law, in fact, in the prior determination. The petitioner's reliance on the structure of 8 CFR 1003.23 is also misplaced because while subsection B1 does discuss both in the same paragraph, it then subdivides and differentiates between motions to reopen and motions to reconsider. Paragraph B2 provides for motions to reconsider and states that they must specify the errors of law, in fact, in the prior determination. Subsection B3 then addresses motions to reopen and specifies they must be accompanied by new evidence. And that mirrors the structure of the regulation governing motions before the board in subparagraph A. It discusses both motions to reopen and reconsider. Subparagraph B discusses motions to reconsider. Subparagraph C discusses motions to reopen. And that all mirrors the INA itself, which does not differentiate between motions filed before the board and motions filed before the immigration judge. That statute, 8 USC section 1229A, subparagraph C, subparagraph 6 provides for motions to reconsider and subparagraph 7 provides for motions to reopen. So there is no basis for the petitioner's contention that this is a novel issue or that the board could somehow reach back to the adverse credibility determination, which was administratively final because the petitioner chose not to pursue either of two remedies available to him, which was filing a timely motion to reconsider. And there can be no argument that a motion filed more than 90 days after the immigration judge's prior decision would not be a timely motion because the statute and the regulations provide a 30-day deadline. Instead, the petitioner attempts to invoke the immigration judge's sua sponte authority, but the agency has been clear that its sua sponte authority is not meant to circumvent the statutory and regulatory limits on motions to reconsider. And that is precisely what the petitioner tried to do before the agency. And the agency did not abuse its discretion in declining to allow him to undermine the regulations and the finality of his removal proceedings. Accordingly, the agency correctly looked to, did not reassess or reevaluate the adverse credibility determination, and looked to evidence about the treatment of individuals returning to air trail from abroad. And in that regard, to respond to Judge Fitzpatrick's question, the correct standard overview is abuse of discretion. And the petitioner has not shown that the agency's record was arbitrary, irrational, or contrary to law. And notably, to carry his heavy burden of demonstrating immaterial change in country conditions, the petitioner had to present evidence that had individualized relevancy, and that was qualitatively different than the evidence that he had presented to the immigration judge. And he did not do so. For instance, the the 2017 country report, which was presented to the immigration judge. And as the agency noted, the report from the special rapporteur was also materially unchanged from the evidence that was presented before the immigration judge. And this case, therefore, is squarely within the ambit of this court's decision in Najmabadi v. Holder, where this court considered an individual from against women, and she was afraid to return to that country because of what the country report is called abysmal conditions. Many years later, she submitted a motion to reopen, presenting a country report, which provided the exact same information. And this court said that that is not qualitatively different evidence, which is sufficient to demonstrate changed country conditions. And that's true in this case. And to the extent the petitioner relies on the European Asylum Support Office report, the immigration judge and the board specifically acknowledged that evidence and said that while the petitioner claims that there are reports of torture and harsh treatment, the ESO report is based on anecdotal information. And furthermore, the report provides that information is available only regarding persons repatriated across the land borders from the country. And that is anecdotal. The report also provides, quote, the report is not meant to give a complete view of the current political or human rights situation in Eritrea. And that's in the record at page 166. The board took account of that information, and then it looked to, I'm sorry, the board took account of that information, as well as the limitations that that report explicitly pointed out itself, and then looked to the 2018 country report and what it said about the treatment of returnees. And according to the country report, individuals who are failed asylum seekers abroad sometimes have their re-entry request examined with greater scrutiny. And although, and there were reports of individuals being denied re-entry. But the 2017 country report contained that exact same information. So there is no qualitatively different evidence about the treatment of returnees to Eritrea. And the board did not abuse its broad discretion in concluding that the petitioner had failed to carry his heavy burden of demonstrating immaterial change in country conditions. If the court has no further questions, then the government would respectfully request that this court dismiss the petition for review in part because it lacks jurisdiction to consider the petitioner's related challenges to his charge of inadmissibility and because substantial or the agency acted well within its discretion in concluding that the petitioner could not challenge his underlying adverse credibility determination and did not demonstrate immaterial change in country conditions. So did either of my colleagues have any additional questions? No. All right. Thank you. All right. We'll go back to you, Ms. Hung. Thank you, Your Honor. I have four points. First, Judge Callahan, in answer to your question on what are the practical implications if the A6, A7 argument is accepted, is that just from speaking from personal experience of having dozens of asylum cases or dozen of immigration cases before this court, as a practical matter, the vast majority of charges are under A6 for someone in Mr. Gabrielli's position. In a situation like this, when the agency errs and doesn't charge the right one, then the error is there and it can be cured by simply charging A6. The government never explains under page 33 of the reply brief, under the statute of A7, what then the meaning of after listing what documents the required under the regulation issued by the Attorney General under section 1181, subsection A of this title, that there is no other interpretation for that statute other than just to ignore it. On the second point, for again, for the futility argument to satisfy exhaustion, matter of MDCV 28INN, deck 18, is a situation that was decided in 2020 where the asylum applicant raised the exact same argument Mr. Gabrielli is raising now and the BIA dismissed it, citing 2.0. Third, on the motion to reopen and reconsider issue, every case cited by the government only discuss the regulation relevant to the BIA. The government never cited one case that discussed the motion to reopen and reconsider that Mr. Gabrielli invoked when he cited to 23B1. And on the fourth issue, to judge Fitzwater's question, I apologize, I misspoke. The abuse of discretion is the proper standard of review for reviewing the motion to reopen. Matter, or I'm sorry, Malti is the case that shows that the court has the authority under that review to look at the documentation that was supplied in the motion to reopen, compared to the documentation that was supplied at the IJ hearing and determine whether the September 2019, the border closed and the political dissidents, the failed asylum seekers and those who had exited the country are now in harm's way. That is qualitatively different than the April 2019 holding where the IJ said the border was open and people are safe to return. If there are no further questions, may I submit this? I do have one little question. Are you doing this pro bono? I know you do stuff with Boston College, but I wasn't sure if this was a pro bono case. It was your honor. All right. Well, thank you as well for your pro bono work. And I will say that both, you know, thank you both of you for your excellent argument. It's clear that you both have a passion for immigration law. And I think most immigration lawyers would want to be both of you when they grow up. So thank you both of you for your excellent arguments. And unless either of my colleagues have an additional question, we'll submit the case. All right. Thank you both. All right.
judges: Hawkins, Callahan, Fitzwater